The People of the State of Illinois, Plaintiff-Appellee, *v.* Thomas E. Johnson *et al.*, Defendants-Appellants.

(Nos. 54098, 54099 cons.;

First District—March 25, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Nunzio Dan Tisci and James J. Doherty, Assistant Public Defender, of counsel,) for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Nicholas A. DeJohn, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendants, Thomas E. Johnson and Larry L. Traylor, were each convicted of rape, attempted rape and aggravated battery by the court sitting without a jury. They were each sentenced to from 4 to 6 years in the penitentiary on each count, the sentences to be served concurrently. They appeal on the ground that they were not proven guilty beyond a reasonable doubt of the crimes charged.

We reverse.

The complaining witness testified she came out to her front porch on the evening of September 12, 1968. While either sitting on the porch or taking a short walk down the block, a bearded man started a conversation with her. It is unclear from the record if this bearded man was defendant Johnson or an unidentified third man. She stated that the person asked her to go to a hotel with him. She told him that she didn't know him and didn't want to go to a hotel with him.

She indicated there were two other persons present at that time. She then walked down the street with the unidentified third man by her side and the two defendants walking behind her. She further testified that when she reached an alley the three individuals took her into it while holding her mouth telling her not to cry out. She testified that all of them took turns holding her mouth while tearing at her clothes.

She testified that the defendant whom she identified as Traylor tore her clothes off and demanded $800 from her. The third man then "* * * laid me down. He didn't throw me * * *. He turned over on the side and got on his knees and started with me while the other two men were watching me * * *. He just did what any other man would do with a lady. That's what he did * * *. He didn't, you know, rough with me or any other way, but just that."

The complaining witness further testified that she had seen the unidentified man twice before. She further testified that she saw the two other persons watching, although there were no lights in the alley, and she said it was very dark.

She went on to testify that when a car started coming down the alley the unidentified man who was having intercourse with her got up, and she got up and ran in the same direction as the unknown man. She testified that the other two men, while running with her, started hitting her, causing various contusions. Johnson lifted her up, and Johnson and Traylor were on either side of her walking down the alley when the police came up.

She was treated and examined at a hospital where she spoke to a police officer, but she did not mention the unidentified person whom she later alleged had intercourse with her. The first time she told of the third man having relations with her was the following morning at the preliminary hearing, notwithstanding the fact that she was interviewed by police at the hospital, was again interviewed by police who drove her from the hospital to her home and was interviewed a third time by police before the preliminary hearing.

Two police officers testified that when they came down the alley they saw the two defendants walking on either side of complainant holding

her by her arms. They did not see her battered. The officers testified they came up within 50 feet of the two defendants and the complainant when Traylor turned around, saw the car, and ran. Both men were apprehended and brought back to the complainant where she identified them.

Defendant Johnson testified that he and defendant Traylor went into the alley to help the complainant and were trying to lead her out of the alley when the police arrived. Johnson further had two character witnesses who testified to his good reputation for truth and veracity and to his good character.

■■ In order to constitute rape, the intercourse must be by force and against the will of the complainant. (Ill. Rev. Stat. 1967, ch. 38, par. 11—1.) Here the evidence shows that the complainant did not cry out, did not in any way attempt to escape, and did not in any way attempt to fight off the alleged rape. Indeed, she herself testified that she wasn't roughed up in any way and that the intercourse was simply "* * * just what any other man would do with a lady." See *People v. Sparling*, 83 Ill.App.2d 104, 226 N.E.2d 54; *People v. Griffin*, 76 Ill.App. 2d 326, 222 N.E.2d 179.

■■ The prosecution concedes as it must that there was no attempt rape prior to the alleged rape. This is because no person may be convicted of both the inchoate and the principle offense. Ill. Rev. Stat. 1967, ch. 38, par. 8—5.

■■ The prosecution, therefore, contends that the attempted rape took place after the intercourse. However, there was no act testified to which would have constituted a substantial step toward the commission of the offense of rape. Ill. Rev. Stat. 1967, ch. 38, par. 8—4; c.f. *People v. Poe*, 109 Ill.App.2d 295, 248 N.E.2d 715.

This leaves only the conviction for aggravated battery. The testimony of the complainant shows that she was beaten only while an automobile was coming down the alley with its lights shining on the defendants and herself. It turned out that the automobile was a police car. The policemen completely discredited the testimony of the complainant, testifying that they saw no beating taking place while they were coming down the alleyway, but rather that the two defendants were walking down the alley each holding an arm of the complainant. This testimony corroborates the testimony of the defendant Johnson.

■■ Therefore, the conviction for aggravated battery cannot be sustained.

Judgment reversed.

McNAMARA, P. J., and DEMPSEY, J., concur.